**In re William LINK, III, Debtor.**

**Bankruptcy No. 93–18381–JNF.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 28, 1994.

---

Steven A. Kressler, Kressler, Kressler & Pitnof, Worcester, MA.

Gary W. Cruickshank, Trustee, Boston, MA.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the objection filed by the Chapter 7 Trustee (the "Trustee") to the Debtor's claimed exemption in individual retirement accounts. The objection raises the following issue: Is property held in an individual retirement account ("IRA") exempt from property of the estate pursuant to 11 U.S.C. § 522(d)(10)(E), and, if so, to what extent is the property exempt? [1]

**1.** Section 522(d)(10)(E) provides in relevant part the following:

## II. FACTS

The Court conducted a hearing on the Trustee's objection on January 26, 1994. Based upon the uncontested facts set forth in the pleadings and the offers of proof made at the hearing, the Court makes the following findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

The Debtor, William Link III, holds approximately $48,000 in the following three separate IRA accounts:

| | |
|---|---|
| Safety Fund National Bank Acct. # 1 | $ 3,152 |
| Safety Fund National Bank Acct. # 2 | $ 4,914 |
| People's Savings | $40,335 |

The Debtor is self-employed as an attorney in general practice with an office located in Fitchburg, Massachusetts. The Debtor indicated that his net income from his law practice for 1991 and 1992 was $50,000 and $58,500 respectively. The Debtor is currently being investigated by the Federal Bureau of Investigation with respect to transactions involving the failed First Service Bank. (The Debtor has not been indicted and the investigation of attorneys dealing with a failed bank is not unusual.)

The Debtor is 46 years old, in generally good health. He is, however, suffering from anxiety and depression, although he is not receiving medical treatment. He and his wife have two dependent children, ages sixteen and eleven.

The Debtor's wife is also employed and has an annual income of $5,500. On his bankruptcy schedules, the Debtor listed his monthly income of $5,555 and monthly expenses of $5,483. The expenses included $1,100 for one of the children to attend private school.

The couple's residence, which is owned by the wife, has no equity, and the mortgage loan is in default. The Debtor listed over $900,000 in secured debt and approximately $6.8 million in unsecured debt.

## III. DISCUSSION

■■■ The analysis of bankruptcy exemptions begins with the procedural rule that the party objecting to the exemption bears the burden to prove the debtor is not entitled to the claimed exemption. Fed.R.Bankr.P. 4003(c). However, courts have traditionally followed a policy of construing exemptions liberally in favor of debtors. *In re Sisco,* 147 B.R. 495, 496 (Bankr.W.D.Ark.1992); *In re Chiz,* 142 B.R. 592, 593 (Bankr.D.Mass.1992). Despite these rules giving preference to exemptions, the case law concerning the applicability of a section 522 exemption to IRAs is unsettled. *In re Levitt,* 137 B.R. 881 (Bankr. D.Mass.1992).

To date, the only circuit court to discuss the issue of IRA exemptions has been the Third Circuit. *Clark v. O'Neill (In re Clark),* 711 F.2d 21, 23 (3rd Cir.1983). That circuit has taken the position that the exemption does not apply unless the debtor has a present right to payment from the IRA free of the early withdrawal penalty. *Clark,* 711 F.2d at 23. The Third Circuit's interpretation of section 522 limits the exemption to fulfilling the debtor's present needs. *Id.* Under this view, funds that represent a future payment of income to the debtor are thought to be based on the debtor's long term security and outside the scope of the Congressional intent in providing exemptions from property of the estate. *Id.* This reasoning has been followed in later decisions within the Third Circuit and has been adopted by some bankruptcy courts in other circuits. *Velis v. Kardanis,* 949 F.2d 78, 81 (3rd Cir.1991); *Bohm v. Brewer (In re Brewer),* 154 B.R. 209, 213 (Bankr.W.D.Pa.1993); *In re Chick,* 135 B.R. 201, 203 (Bankr. D.Conn.1991); *In re Heisey,* 88 B.R. 47, 51 (Bankr.D.N.J.1988).

---

(d) The following property may be exempted ...

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profit sharing, annuity, similar plan or contract on account of ... age ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(iii) such plan or contract does not qualify under section ... 408 ... of the Internal Revenue Code....

11 U.S.C. § 522(d)(10)(E).

Other courts, not bound by the Third Circuit precedent, have given contrary interpretations of the section 522 exemption. One line of cases takes a very restrictive approach to the section 522 and completely disallows the exemption because the IRA is viewed as a regular savings account because the debtor has complete control over the funds at all times. *See In re Moss,* 143 B.R. 465, 466 (Bankr.W.D.Mich.1992); *See also In re Iacono,* 120 B.R. 691 (Bankr.E.D.N.Y. 1990); *In re Pauquette,* 38 B.R. 170, 174 (Bankr.D.Vt.1984). The debtor's control prevents the IRA from being a "payment ... on account of illness, ... [or] age ..." because the debtor is able to withdraw funds unconditionally and has the ability to divest the funds from the purpose of retirement unlike a traditional pension plan. *Moss,* 143 B.R. at 466; *Pauquette,* 38 B.R. at 174. Under this view, the significant penalties attached to the early withdrawal of IRAs are irrelevant because the more key issue is the debtor's unlimited access to the IRA. *Moss,* 143 B.R. at 466.

Other courts, including two Massachusetts bankruptcy courts, have allowed the exemption on a limited basis when the funds are reasonably necessary to provide for the basic needs of the debtor. *In re Yee,* 147 B.R. 624, 626 (Bankr.D.Mass.1992); *Chiz,* 142 B.R. at 593; *In re Cilek v. Dairyland Insurance Agency,* 115 B.R. 974, 978 (Bankr.W.D.Wis. 1990). These courts have rejected restrictions on the section 522 exemption based on the debtor's control over the IRA funds or the debtor's inability to withdraw funds without penalty, *Yee,* 147 B.R. at 626, and hold that an IRA is a "similar plan" to the four specific plans identified in section 522(d)(10)(E) because the IRA's purpose is similar to pensions and annuities in that an IRA is designed to provide substitute wages to the debtor at a future date. *In re Hall,* 151 B.R. 412, 426 (Bankr.W.D.Mich.1993); *Yee,* 147 B.R. at 626; *Chiz,* 142 B.R. 592–93. Courts adopting the reasonably necessary standard reject the characterization of an IRA as a savings account which would not permit the debtor to have any exemption. According to the holdings of these courts, IRA savings are fundamentally different from a savings accounts because the assets in

an IRA receive tax deferred treatment, the holder is required to pay a substantial penalty for early withdrawals, and the assets held in an IRA can include stock. *Chiz,* 142 B.R. at 593; *Cilek,* 115 B.R. at 988. Also, the language of the statute refers to the purpose of the section 522 exemption which is to provide for the support of the debtor and the debtor's dependents. As a result, interpretations of section 522 should not discriminate against the IRA savings plan in favor of other plans due to the debtor's direct control over the funds because the control factor is not related to the basic living needs standard incorporated in section 522. *In re Hickenbottom,* 143 B.R. 931, 933–34 (Bankr. W.D.Wash.1992).

These courts also reject the Third Circuit's interpretation requiring the debtor to have a present right to payment by reasoning that the statute does not refer to payments that are presently being received by the debtor at the time of the petition, but rather refers to the "right to receive a payment." *Cilek,* 115 B.R. at 979. Courts adopting this standard for IRAs hold that the public policy for allowing the debtor exemptions, as with all retirement vehicles, such as annuities and pensions, is to protect the debtor's future income sources and therefore the IRA should be included in this category. *Hickenbottom,* 143 B.R. at 933); *Chiz,* 142 B.R. at 593 (IRA income is intended to be used in future years); *Cilek,* 115 B.R. at 978.

The "reasonably necessary" test to determine the extent of the allowable exemption is based on several factors and is determined within the court's discretion on a case-by-case basis. *In re Bogart,* 157 B.R. 345, 347 (Bankr.W.D.Ohio 1993); *Sisco,* 147 B.R. at 497. Generally, the courts will use factors adopted by the bankruptcy court in *In re Flygstad,* 56 B.R. 884, 889–90 (Bankr. N.D.Iowa 1986) to determine whether or not the debtor's IRA funds are reasonably necessary. *See e.g., Bogart,* 157 B.R. at 347; *Sisco,* 147 B.R. at 497; *In re Comp,* 134 B.R. 544, 554–55 (Bankr.Pa.1991). These factors include the following:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of the debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training, and education;

(7) Debtor's other assets, including exempt assets;

(8) Liquidity of other assets;

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g., alimony or support payments.

*Flygstad,* 56 B.R. at 889–90. The purpose of the *Flygstad* factors is to determine whether the debtor will have excess income over reasonable expenses that could be used to fund retirement, and, if so, whether the age of the debtor will permit the funding of a new retirement plan if the IRA is held to be nonexempt. *Bogart,* 157 B.R. at 347; *Sisco,* 147 B.R. at 497. The exemption is not intended to continue the debtor's standard of living in the future, but is to be used to provide for the basic needs of the debtor and any dependents. *Brewer,* 154 B.R. at 213; *Cilek,* 115 B.R. at 987; *In re Hunsucker,* 106 B.R. 220 (Bankr.D.Mont.1988). In terms of expenses, the court will normally consider the likely future medical expenses of the debtor and any dependents, and the number of dependents. *Hall,* 151 B.R. at 428; *Sisco,* 147 B.R. at 497. The size of the IRA fund is also a factor in the court rulings. Because a small principal balance in an IRA for a middle aged or older debtor is unlikely to exceed the debtor's minimal living needs, courts will normally allow a full exemption for these sums. *Bogart,* 157 B.R. at 348 (a 58 year-old debtor who will retire in two years and is unlikely to gain other employment is permitted to keep $5,545, but must turnover $2,083 in another IRA account); *Hall,* 151 B.R. at 428 (a 67 year-old debtor with limited ability to save and major medical expenses is entitled to $14,000 IRA); *Sisco,* 147 B.R. at 496–98 (reasonably necessary where debtor had $14,000 IRA, was 51 years old, has two dependent children, $700/month excess income

and major medical expenses for his wife); *Hickenbottom,* 143 B.R. at 934 (IRA balance of $4,547 for debtor is permitted a full exemption as the debtor's net income is $1,774/month, the debtor and spouse are both 46–years old without dependents and with little equity in their residence); *Cilek,* 115 B.R. at 990 (court permitted a full exemption as the Debtor was fifty-four, the fund had $17,000 and was used to support the debtor's now widowed wife). However, if the debtor is relatively young and has a present earning capacity, courts will normally infer that the debtor has the ability to replenish the retirement fund and will deny the exemption. *Brewer,* 154 B.R. at 214 (under reasonably necessary test the debtor must give up $33,239 IRA because he is only 52, in good health, his spouse can work and with the IRA funds the unsecured creditors will be paid in full); *In re Bell,* 119 B.R. 783, 785 (Bankr. D.Mont.1988) (need for IRA funds not sustained when debtor is 45 years-old, has a pension and monthly income of $200 in excess of expenses).

## IV. CONCLUSION

This Court shall follow the rulings of Chief Judge Queenan in *Chiz* and Judge Goodman, sitting by designation, in *Yee.* The Court rules that the Debtor is entitled to claim an exemption in his IRAs. However, the Court finds based upon the undisputed facts and the *Flygstad* factors set forth above that the Debtor has failed to establish that the IRAs are reasonably necessary for his support. As a 46 year old attorney in good health with the ability to earn approximately $50–55,000 per year for the next 10 to 15 years the Debtor has the ability to prepare for his retirement without prejudice to the creditors of this bankruptcy estate. Both he and his wife are capable of working and saving for their retirement. As the Debtor's child is leaving private school, a move that will result in savings of $1,100 per month, the Debtor shall have substantial excess income with which to fund his retirement. Accordingly, the Court sustains the Trustee's objection to the Debtor's claimed exemption.